Laurie J. Edelstein (CA Bar No. 164466)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
Tel: (628) 267-6800
ledelstein@jenner.com

Alison I. Stein (*pro hac vice* application forthcoming*)*
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel: (212) 891-1622
astein@jenner.com

*Counsel for Plaintiffs and Movants*
*Dow Jones & Company, Inc. and NYP Holdings, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOW JONES & COMPANY, INC. and NYP HOLDINGS, INC., | Case No. |
| Movants, | [RELATED TO PENDING CASE NO. 1:24-cv-07984-KPF IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK] |
| v. | |
| PIETER ABBEEL, | **PLAINTIFFS AND MOVANTS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH A NON-PARTY SUBPOENA** |
| Respondent. | |
| DOW JONES & COMPANY, INC. and NYP HOLDINGS, INC., | |
| Plaintiffs, | Judge: |
| | Date: |
| v. | Time: |
| PERPLEXITY AI, INC., | |
| Defendant. | |

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA          CASE NO.

## NOTICE OF MOTION AND MOTION TO COMPEL

PLEASE TAKE NOTICE that on _____, at __:__ __ (day and time to be determined by the Court), or as soon thereafter as counsel may be heard, in a Courtroom to be determined, Dow Jones & Company, Inc. and NYP Holdings, Inc. (together, "Movants") will and hereby do move pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure for an Order Compelling Pieter Abbeel to comply with a subpoena duces tecum issued by Movants in connection with an action pending in the United States District Court for the Southern District of New York captioned *Dow Jones & Co., et al. v. Perplexity AI, Inc.*, No. 1:24-cv-07984-KPF and served on Pieter Abbeel (the "Subpoena").

This Motion is brought pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure on the grounds that Pieter Abbeel has refused to search for and produce responsive, non-privileged communications from non-email messaging platforms relevant to the disputed issues in the underlying litigation. The request for these communications is proportional to the needs of the case, and Mr. Abbeel has failed to provide a legitimate basis for refusing to search for and produce these communications. Movants respectfully request that the Court issue an Order compelling Pieter Abbeel to produce all responsive non-privileged communications from non-email messaging platforms in response to each Category of documents sought in the Subpoena.

This Motion is supported by this Motion, the accompanying Memorandum of Law and Points of Authorities, the Declaration of Alison I. Stein, Esq. dated June 26, 2026 and accompanying exhibits, all pleadings and papers on file herein, and upon such further oral and documentary evidence as may be presented at or before the hearing on this Motion.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1

Movants hereby certify that their counsel has corresponded with counsel for Pieter Abbeel by videoconference and in writing regarding Pieter Abbeel's refusal to produce responsive, non-privileged communications from non-email messaging platforms in response to the March 10, 2026 Subpoena, including formal meet and confer videoconferences that took place on April 1, 2026 and April 22, 2026, and a subsequent exchange of correspondence, and that such attempts to resolve these issues were unsuccessful. *See* Stein Decl. Ex. E.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND .................................................................................................... 2

    A.    Factual Background ...................................................................................... 2

    B.    Procedural Background ................................................................................. 5

III.  LEGAL STANDARD ........................................................................................... 14

IV.   ARGUMENT ........................................................................................................ 15

    A.    The Documents the Subpoena Seeks Are Relevant to the Issues in the Case ....... 16

        1.    The Non-Email Messages the Subpoena Seeks Are Relevant to Movants' Claims of Infringement and Damages ..................................... 17

        2.    The Non-Email Messages the Subpoena Seeks Are Relevant to Perplexity's Fair Use Defense .................................................................. 19

    B.    The Non-Email Messages Are Proportional to the Needs of the Case ................. 20

    C.    Mr. Abbeel Has No Basis to Refuse to Fully Comply with the Subpoena ........... 22

V.    CONCLUSION ..................................................................................................... 23

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA          CASE NO.

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*,
    No. 3:25-cv-09514 (N.D. Cal.) .................................................................................................... 1

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023) ...................................................................................................................... 19

*Cable News Network Inc. v. Perplexity AI, Inc.*,
    No. 1:26-cv-04427 (S.D.N.Y.) ..................................................................................................... 1

*Chicago Tribune Company, LLC v. Perplexity AI, Inc.*,
    No. 1:25-cv-10094 (S.D.N.Y.) ................................................................................................. 1, 7

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*,
    109 F.3d 275 (6th Cir. 1997) ...................................................................................................... 18

*Dow Jones & Co., et al. v. Perplexity AI, Inc.*,
    No. 1:24-cv-07984-KPF (S.D.N.Y.) ................................................................................... 1, 3, 4

*Encyclopaedia Britannica, Inc. v. Perplexity AI, Inc.*,
    No. 1:25-cv-07546 (S.D.N.Y.) ................................................................................................. 1, 7

*Erickson v. Builder Advisor Grp. LLC*,
    2022 WL 1265823 (N.D. Cal. Apr. 28, 2022) ........................................................................... 14

*Hachette Book Grp., Inc. v. Internet Archive*,
    115 F.4th 163 (2d Cir. 2024) ...................................................................................................... 19

*Harold Lloyd Corp. v. Witwer*,
    65 F.2d 1 (9th Cir. 1933) ............................................................................................................ 19

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) ..................................................................................................................... 19

*Kadrey v. Meta Platforms, Inc.*,
    788 F. Supp. 3d 1026 (N.D. Cal. 2025) ..................................................................................... 20

*Katz v. Shell Energy N. Am. (US), LP*,
    566 F. Supp. 3d 104 (D. Mass. 2021) ........................................................................................ 21

*Peskoff v. Faber*,
    No. CIV A. 04-526 ...................................................................................................................... 23

*Reddit, Inc. v. SerpApi LLC*,
    No. 1:25-cv-08736 (S.D.N.Y.) ................................................................................................. 1, 7

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA        CASE NO.

*Romag Fasteners, Inc v. Fossil, Inc.*,
  590 U.S. 212 (2020) ............................................................................................................. 18

*Rovio Entertainment, Ltd. v. Allstar Vending, Inc.*,
  97 F. Supp. 3d 536 (S.D.N.Y. 2015) ................................................................................... 18

*SEC v. Mozilo*,
  2010 WL 11468959 (C.D. Cal. Oct. 7, 2010) ...................................................................... 23

*In re: Subpoena to Apple Inc.*,
  2014 WL 2798863 (N.D. Cal. Jun. 19, 2014) ...................................................................... 14

*In re Subpoena to Paypal Holdings, Inc.*,
  Case No. 20-mc-80041-AGT, 2020 WL 3073221 (N.D. Cal. June 10, 2020)...................... 16

*The New York Times Company v. Perplexity AI, Inc.*,
  No. 1:25-cv-10106 (S.D.N.Y.) .......................................................................................... 1, 7

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
  813 F.2d 1207 (Fed. Cir. 1987) ........................................................................................... 15

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
  2024 WL 3416644 (N.D. Cal. July 14, 2024) ...................................................................... 21

*UMG Recordings, Inc. v. AH Capital Management, LLC*,
  No. 25-mc-80194-KAW (N.D. Cal. Sept. 9, 2025), ECF No. 28 ......................................... 16

*V5 Techs. v. Switch, Ltd.*,
  332 F.R.D. 356 (D. Nev. 2019) ........................................................................................... 22

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  2008 WL 3876142 (N.D. Cal. Aug. 18, 2008)..................................................... 17, 18, 21, 22

*Zalewski v. Cicero Builder Dev., Inc.*,
  754 F.3d 95 (2d Cir. 2014) .................................................................................................. 18

**Statutes**

17 U.S.C. § 107(1) ...................................................................................................................... 19

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ..................................................................................................... 14, 16, 20

*Perplexity Decoded: Lessons from the Founder/CEO and his PhD Advisor*, UC
  BERKELEY SUTARDJA CENTER FOR ENTREPRENEURSHIP & TECHNOLOGY,  (May
  13, 2025), https://scet.berkeley.edu/aravind-srinivas-lessons-from-building-
  perplexity-ai/ ......................................................................................................................... 4

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA        CASE NO.

*Perplexity raises Series A funding round*, PERPLEXITY (Mar. 28, 2023)
https://www.perplexity.ai/hub/blog/announcing-our-series-a-funding-round-
and-mobile-app-launch.................................................................................................. 4

*Pieter Abbeel Overview*, PITCHBOOK,
https://pitchbook.com/profiles/investor/183720-43#overview .................................................. 4

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA          CASE NO.

## <u>MEMORANDUM OF LAW AND POINTS OF AUTHORITIES</u>

### I.     INTRODUCTION

On October 21, 2024, Movants Dow Jones & Company, Inc. and NYP Holdings, Inc. ("Movants"), the publishers of *The Wall Street Journal* and the *New York Post*, sued Perplexity AI, Inc. ("Perplexity") in the Southern District of New York for copyright and trademark infringement. *See Dow Jones & Co., et al. v. Perplexity AI, Inc.*, No. 1:24-cv-07984-KPF (S.D.N.Y.). Movants allege that Perplexity, a start-up that markets a generative artificial intelligence ("GenAI") application that purports to deliver to its users "Answers" to their queries, instead of links to sources like a traditional search engine would, copies and misappropriates Movants' copyrighted content and trademarks for use in its product. The lawsuit is of critical public importance in addressing the unauthorized appropriation of news organizations' copyrighted content and brand trust by GenAI products.[1]

On March 10, 2026, Movants served a subpoena duces tecum (the "Subpoena") on Pieter Abbeel, one of Perplexity's earliest investors and a key advisor to Aravind Srinivas ("Srinivas"), Perplexity's CEO and co-founder. The Subpoena seeks documents related to Mr. Abbeel's awareness of and communications surrounding Perplexity's unlicensed use of copyrighted news content and trademarks, communications about Perplexity's procurement and use of such content, and key financial information related to Mr. Abbeel's investment and business and marketing plans of Perplexity. Movants issued this Subpoena to Mr. Abbeel not only because he was an investor in Perplexity, but also because he was a key early advisor to Srinivas. Mr. Abbeel has unique insight into its business model and decisions concerning its use of copyrighted content.

---

[1] In addition to Movants, other prominent content owners have filed copyright infringement actions against Perplexity, all of which are pending. *See The New York Times Company v. Perplexity AI, Inc.*, No. 1:25-cv-10106 (S.D.N.Y.); *Chicago Tribune Company, LLC v. Perplexity AI, Inc.*, No. 1:25-cv-10094 (S.D.N.Y.); *Amazon.com Servs., LLC v. Perplexity AI, Inc.*, No. 3:25-cv-09514 (N.D. Cal.); *Encyclopaedia Britannica, Inc. v. Perplexity AI, Inc.*, No. 1:25-cv-07546 (S.D.N.Y.); *Cable News Network Inc. v. Perplexity AI, Inc.*, No. 1:26-cv-04427 (S.D.N.Y.); *see also Reddit, Inc. v. SerpApi LLC*, No. 1:25-cv-08736 (S.D.N.Y.).

1

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA          CASE NO.

Although Mr. Abbeel produced some emails in response to the subpoena, he refused to search for, let alone produce, *any* communications from non-email messaging platforms, such as iMessage, WhatsApp, Slack, Discord, and Signal.  He refused even though his counsel confirmed that Mr. Abbeel and Srinivas talked about "a lot" over non-email messaging platforms.  Stein Decl. ¶ 13.  Indeed, given the close, personal nature of Mr. Abbeel's relationship with Srinivas and documents produced by other parties confirming that communications occurred using non-email messaging platforms, it is highly likely that Mr. Abbeel's non-email messaging platforms would be key methods of communication that would contain documents responsive to the Subpoena. Counsel for Mr. Abbeel claims that producing communications from non-email messaging platforms would be unduly burdensome and disproportionate to the needs of the case.  However, through both meet and confers and numerous emails, Mr. Abbeel failed to substantiate any legitimate burden.  Moreover, Movants attempted to ease any purported burden by proposing narrowed search strings and limiting the messaging search to non-email messages exchanged with only four other individuals.  *See* Stein Decl. Ex. E.  Counsel for Mr. Abbeel would not agree to those (or any other) proposed search strings and dismissed all of Movants' proposals without even attempting to search any non-email messaging platforms.  *Id.*

Mr. Abbeel has no legitimate basis to refuse to fully comply with the Subpoena.  The categories of documents the Subpoena seeks are highly relevant to the claims and defenses in the underlying lawsuit.  The requests also are proportional to the needs of the case, especially given that the non-email messaging platforms are highly likely to contain relevant communications.  The Court should compel Pieter Abbeel to comply with the Subpoena and search for and produce non-privileged communications from non-email messaging platforms responsive to each request.

## II.    BACKGROUND

### A.    Factual Background

Movants are the publishers of *The Wall Street Journal* and the *New York Post*, two of the most widely circulated newspapers in the United States.  They hold the copyright (and all associated rights) for articles published in *The Wall Street Journal* and the *New York Post* authored by their staff writers and editors, as well as in the arrangement and selection of the articles contained in each

2

issue published.  Movants make these articles available in daily hard-copy publications of *The Wall Street Journal* and *New York Post*, and on their associated websites, www.wsj.com and www.nypost.com.  *See* Stein Decl. Ex. A (Second Amended Complaint, *Dow Jones & Co., et al. v. Perplexity AI, Inc.*, No. 1:24-cv-07984 (S.D.N.Y Jan. 28, 2025), ECF No. 46).

The defendant, Perplexity, is the developer of a GenAI application that engages in massive online copyright and trademark infringement through its use of Movants' copyrighted news articles and brand names in connection with its consumer-facing web application.  Perplexity markets a GenAI-powered "Answer Engine," which leverages at least two emerging technologies: (1) other companies' large language models ("LLMs"), which are predictive text machines that train on the semantic relationship among words in order to produce text that appears like natural language, and (2) Perplexity's own retrieval-augmented generation ("RAG"), which allows GenAI applications to focus on specific sets of data so that the predictive capabilities of the LLMs are enhanced and focused on the information and data fed to the LLM through RAG.  Perplexity has copied significant amounts of content from the internet, and it stores that content to use in connection with RAG.  *Id.* at ¶ 70.  When one of Perplexity's users enters a query, Perplexity's GenAI application feeds that data and information stored in its RAG database (or otherwise copied from internet sites, including Movants' websites) into an LLM to generate an answer.  This, Perplexity touts, allows its users to obtain answers to their questions while "Skip[ping] the Links" to the primary sources for that data and information.  *Id.* at ¶ 4.  By diverting users away from the primary sources that generated the underlying information, Perplexity free-rides on those sources while depriving them of valuable web traffic and related ad revenue.  *Id.* at ¶ 44.

As alleged by Movants, Perplexity first engages in massive copyright infringement when it copies, without authorization, all of Movants' copyrighted news articles—meticulously authored by dedicated journalists at a significant cost to Movants—that it can find on the internet.  It infringes again when it feeds that content into an LLM alongside a Perplexity user's query to output an answer using Movants' copyrighted expression.  *Id.* at ¶ 75.  Unlike other GenAI companies, like OpenAI and Meta, Perplexity has refused to meaningfully seek appropriate licensing solutions with Plaintiffs, but has rather chosen to steal and exploit Plaintiffs' content for its own gain.  *Id.* at ¶ 14.

3

Moreover, LLMs are prone to a certain kind of error, known as hallucinations, which occur when an LLM produces an output that is not accurate or otherwise found in the source material. Because Perplexity includes in its answers "citations" to the supposed source material to make the answers appear authentic and authoritative, Perplexity's hallucinations are particularly insidious. *Id.* at ¶ 115. When these erroneous purported facts are branded with the trademarks *The Wall Street Journal* or *New York Post*, Movants' trademarks are diluted and the trust that the consuming public has in these publications is eroded.

Respondent Pieter Abbeel is an early investor in Perplexity and a close and early advisor to Srinivas, the cofounder and CEO of Perplexity. Mr. Abbeel served as Srinivas's PhD advisor at University of California, Berkeley.[2] Mr. Abbeel was one of Perplexity's earliest angel investors and participated in Perplexity's seed round of funding in September 2022.[3] According to Mr. Abbeel's PitchBook profile, he has been and may still be a current board member of Perplexity.[4] During the April 1, 2026 meet and confer, Mr. Abbeel's counsel confirmed that Mr. Abbeel served as an early advisor for Perplexity's board. During the April 22, 2026 meet and confer, Mr. Abbeel's counsel described Mr. Abbeel and Srinivas as "friends" and stated they talked about "a lot" over non-email messaging platforms. Stein Decl. ¶ 13.

Critically, documents produced by other investors confirm Mr. Abbeel's role as a key and early advisor to Srinivas and Perplexity and indicate that Mr. Abbeel is someone who communicated using non-email messaging platforms with Perplexity's founders. *See* Stein Decl. ¶ 11.[5] In the

---

[2] *Perplexity Decoded: Lessons from the Founder/CEO and his PhD Advisor*, UC BERKELEY SUTARDJA CENTER FOR ENTREPRENEURSHIP & TECHNOLOGY, (May 13, 2025), https://scet.berkeley.edu/aravind-srinivas-lessons-from-building-perplexity-ai/.

[3] *Perplexity raises Series A funding round*, PERPLEXITY (Mar. 28, 2023) https://www.perplexity.ai/hub/blog/announcing-our-series-a-funding-round-and-mobile-app-launch.

[4] *Pieter Abbeel Overview*, PITCHBOOK, https://pitchbook.com/profiles/investor/183720-43#overview.

[5] The protective order in the underlying litigation precludes the disclosure of the content of these documents to nonparties. *See Dow Jones & Company, Inc. v. Perplexity AI, Inc.*, No. 1:24-cv-07984-KPF (S.D.N.Y.), ECF No. 62.

4

underlying action, Movants have attempted to get these documents from Perplexity, but Perplexity has produced very few communications from its early planning stage and incorporation through its development of its key product offering. The written communications that third parties to the litigation have produced, however, confirm that non-email messaging platforms were a primary means of communication during that time period. Accordingly, Movants have a strong reason to believe that Mr. Abbeel's non-email messaging platforms will be a source of numerous responsive communications.  Moreover, there have been several instances where Perplexity hasn't produced a document(s), but third party discovery later shows the document(s) exists.  This is why Plaintiffs are pursuing third party discovery, including here.  Third parties in this case have been and are likely to be in possession of responsive documents Movants are unable to obtain from Perplexity. They must be searched and any responsive, non-privileged communications produced.

**B.     Procedural Background**

On March 10, 2026, Movants served a subpoena duces tecum on Mr. Abbeel with 15 requests for documents addressing five general topics of information tailored to the needs of the underlying litigation: (1) documents related to Mr. Abbeel's investment decision and valuations, *see* Stein Decl. Ex. C Cat. 1, 15; (2) documents regarding Perplexity's business and marketing plans and analysis, *see* Stein Decl. Ex. C Cat. 2, 8; (3) documents about content procurement and acquisition, including with respect to licensing and RAG, *see* Stein Decl. Ex. C Cat. 3, 4, 11; (4) copyright risks and legal impact, *see* Stein Decl. Ex. C Cat. 5–7; and (5) documents discussing Perplexity's product development and content displays, *see* Stein Decl. Ex. C Cat. 9, 10, 12–14.  On April 13, 2026, Mr. Abbeel served his Objections and Responses to the Subpoena. Stein Decl. Ex. D.  Mr. Abbeel objected generally to searching for or producing any non-email communications, among other objections, Stein Decl. Ex. D at ¶ 5, and also asserted this objection specifically in response to each request for production.  That same day, Mr. Abbeel's counsel served an initial document production in response to the Subpoena.  That production only included email communications and no communications from non-email messaging platforms.

Counsel for Mr. Abbeel and Movants met and conferred by videoconference on April 1 and April 22, 2026.  During both conferences, Movants explained how non-email messaging platforms

5

were a key method of communication among and between the founders and their advisors. Movants proposed multiple methods of easing any purported burden in searching for and producing such messages.  Among those methods, Movants proposed narrowed search strings and limited the number of recipients to cabin any search for messages.  Stein Decl. Ex. E.  After numerous inquiries by Movants and delays by Mr. Abbeel's counsel, Mr. Abbeel's counsel stated on May 29, 2026 that Mr. Abbeel would not produce *any* non-email messages or communications.  *Id*.  Mr. Abbeel's counsel asserted that Movants' requests were "improper at least because they are unduly burdensome and not proportional to the needs of the case."  *Id*.  Counsel did not provide any support for Mr. Abbeel's claim of burden. Rather, counsel in a conclusory statement simply asserted that it was "time consuming and expensive" for a nonparty to search non-email messaging platforms, ignoring that Movant had provided a narrowed and targeted way to do so.  Counsel also stated, without basis, that Plaintiffs could obtain these documents from Perplexity.  Counsel also suggested that the "very little information" Mr. Abbeel had previously produced in response to the Subpoena was a reason Mr. Abbeel should not have to search his non-email messaging platforms.  *Id.*

But this point cuts the other way.  The "very little information" Mr. Abbeel previously produced makes the need for him to search his non-email messaging platforms even more pressing. This is especially true given that other documents in this case have shown that non-email messaging platforms were a key way founders of Perplexity communicated about important matters and Mr. Abbeel's counsel's confirmation that Mr. Abbeel communicated with Srinivas over non-email messaging platforms.  *See* Stein Decl. ¶¶ 11, 13.  Moreover, Mr. Abbeel's counsel has never claimed the communications Mr. Abbeel sent and received via non-email messaging platforms are not relevant.

**Movants' Subpoena sought the following Categories of documents:**

> **Category No. 1:** All Documents, including Communications, concerning all Valuations of Perplexity in connection with Your actual or potential investment in Perplexity, including but not limited to Valuations of each Perplexity Product.
>
> **Category No. 2:** All Documents concerning business or marketing plans for Perplexity Products, including any and all assessments of (i) the potential or anticipated market(s) for Perplexity Products, (ii) potential or anticipated use cases for Perplexity Products, and (iii)

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA        CASE NO.

Perplexity Products' ability to disrupt existing markets for news content.

**Category No. 3:** All Documents, including but not limited to business or marketing plans, slide decks, PowerPoints, pitches, summaries, and other presentations, concerning the procurement of Content, including potentially copyrighted Content, for Perplexity Products or Perplexity Predecessor Technology, including but not limited to the right to use such Content, the licensing of Content, any decision whether to license third-party Content, and Documents concerning Perplexity's actual or anticipated policies, procedures, and practices for treatment of copyrighted Content or webpage access restrictions, such as terms of use, firewalls, paywalls, and robots.txt protocols.

**Category No. 4:** All Documents, including but not limited to business or marketing plans, slide decks, PowerPoints, pitches, summaries, or other presentations, concerning Perplexity's RAG or equivalent systems, databases, or Content repositories, including but not limited to the methods used by Perplexity to index, organize, and retrieve Content, its quality control mechanisms, and all third-party services or vendors Perplexity uses or has used for RAG operations.

**Category No. 5:** All non-privileged Documents, including Communications, concerning the copyright or trademark risks associated with Perplexity's use of Content, including but not limited to legal risk assessments or analyses setting forth potential exposure to claims or potential defenses, due diligence, litigation exposure, insurance coverage, indemnification provisions or protections, and discussions or analyses of how copyright litigation against other Generative AI Applications would affect Perplexity's business model or Products.

**Category No. 6:** All Communications concerning Perplexity's use of Plaintiffs' Copyrighted Works, the Action, and/or discussions or analyses of how copyright litigation against other Generative AI Applications would affect Perplexity's business model or Products.

**Category No. 7:** All Communications concerning any changes made to Perplexity's marketing, product, Content collection, business model, or Valuations as a result of the Action, *The New York Times Company v. Perplexity AI, Inc.*, No. 1:25-cv-10106 (S.D.N.Y.); *Reddit, Inc. v. SerpApi LLC et al.*, No. 1:25-cv-08736 (S.D.N.Y.); *Encyclopaedia Britannica, Inc. et al v. Perplexity AI, Inc.*, No. 1:25-cv-07546 (S.D.N.Y.); *Chicago Tribune Company, LLC v. Perplexity AI, Inc.* No. 1:25-cv-10094 (S.D.N.Y.), or any other pending copyright lawsuit against companies due to their use of copyrighted Content in connection with Generative AI applications.

**Category No. 8:** All Documents, including Communications, concerning the effects or potential effects of Perplexity, Perplexity Products, and/or other Generative AI Applications on the news industry, publishers, or Content creators, including but not limited to the economic incentives for creating journalism, the market for news content, and documents concerning Publishers' Compensation Programs.

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA        CASE NO.

**Category No. 9:** All Documents, including Communications, concerning Perplexity's statements, advertisements, or Communications that Perplexity Products allow End Users to "Skip the Links."

**Category No. 10:** All Documents, including all Communications, referencing Plaintiffs or Plaintiffs' Copyrighted Works in the context of creating, developing, using, or improving Perplexity Products or Perplexity Predecessor Technology.

**Category No. 11:** All Documents, including all Communications, concerning (i) the reason for creating a RAG Database or otherwise using RAG in Perplexity Products or Perplexity Predecessor Technology; (ii) the potential or actual monetization of a RAG Database, including but not limited to selling access to the RAG Database or utilizing the RAG Database in a future product; (iii) what Content to include in a RAG Database; (iv) how to procure Content for the RAG Database; and (v) any efforts or contemplated efforts to license Content for the RAG Database.

**Category No. 12:** All Documents, including all Communications, concerning the reasons for developing and implementing, or not developing and implementing, technologies, techniques, or other approaches for the purpose of causing the Outputs and Responses of Perplexity Products or Perplexity Predecessor Technology to appear less similar in word order, word choice, branding, or phrasing to the Content, through any means including but not limited to by using System Prompts, including recommending search topics and the Perplexity Cited Sources feature.

**Category No. 13:** All Documents, including but not limited to correspondence and analyses, concerning Outputs and Responses generated specifically utilizing news-related copyrighted Content and/or Plaintiffs' Copyrighted Works in Perplexity Products or Perplexity Predecessor Technology.

**Category No. 14:** All Communications with Aravind Srinivas, Denis Yarats, Andy Konwinski, and/or Johnny Ho concerning the Content necessary for search capabilities in the development and incorporation of Perplexity and/or any Perplexity Predecessor Technology.

**Category No. 15:** All Documents, including all Communications, regarding Your decision-making regarding Your investment in Perplexity and the information You relied on in deciding to invest in Perplexity.

**Mr. Abbeel asserted the following objections to the Categories:**

**Abbeel's Objection to Category No. 1, 6, 9, 15:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statements and Objections and Objections to Instructions and Definitions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden

8

and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense.

**Abbeel's Objection to Category No. 2:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statements and Objections and Objections to Instructions and Definitions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrases "business or marketing plans," "uses cases," and "ability to disrupt" are vague and ambiguous as used in this Request.

**Abbeel's Objection to Category No. 3:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of

9

Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrases "business or marketing plans," "procurement of Content," "potentially copyrighted Content," and "practices for treatment of copyrighted Content or webpage access restrictions" are vague and ambiguous as used in this Request.

**Abbeel's Objection to Category No. 4:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrases "business or marketing plans" and "methods used by Perplexity to index, organize, and retrieve Content" are vague and ambiguous as used in this Request.

**Abbeel's Objection to Category No. 5:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable

10

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA       CASE NO.

privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrase "copyright or trademark risks" is vague and ambiguous as used in this Request.

**Abbeel's Objection to Category No. 7:**  Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrase "changes made to Perplexity's marketing, product, Content collection, business model, or Valuations as a result of the Action" is vague and ambiguous as used in this Request.

**Abbeel's Objection to Category No. 8:**  Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrase "the effects or potential effects of Perplexity, Perplexity Products, and/or other Generative AI Applications on the news industry, publishers, or Content creators" is vague and ambiguous as used in this Request.

11

**Abbeel's Objection to Category No. 10:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects to the defined term "Plaintiffs' Copyrighted Works" as vague and ambiguous because it does not identify all of Plaintiff's registered works, and overly broad and unduly burdensome to the extent it purports to require Abbeel to determine the full list of registered works in responding to this Request.

**Abbeel's Objection to Category No. 11:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrase "reason for creating a RAG Database or otherwise using RAG in Perplexity Products or Perplexity Predecessor Technology" is vague and ambiguous as used in this Request.

**Abbeel's Objection to Category No. 12:** Abbeel hereby incorporates by reference, as though fully set forth herein, his General

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA        CASE NO.

Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that this Request is vague and ambiguous as written.

**Abbeel's Objection to Category No. 13:**    Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the terms "Outputs" and "Responses" are vague and ambiguous as used in this Request as they are not defined in the Subpoena. Abbeel objects to the defined term "Plaintiffs' Copyrighted Works" as vague and ambiguous because it does not identify all of Plaintiff's registered works, and overly broad and unduly burdensome to the extent it purports to require Abbeel to determine the full list of registered works in responding to this Request.

**Abbeel's Objection to Category No. 14:**    Abbeel hereby incorporates by reference, as though fully set forth herein, his General Statement and Objections and Objections to Definitions and Instructions. Abbeel objects to this Request as overly broad, unduly

burdensome and not proportional to the needs of the case. Abbeel objects to this Request on the ground that it imposes an undue burden and expense on Abbeel, a non-party, by demanding that Abbeel conduct large-scale searches and review of records. Abbeel objects to this Request as unduly burdensome to the extent it requires Abbeel to search for and produce non-email communications (i.e., text messages, Slack); Abbeel will not search for or produce non-email communications. Abbeel further objects to this Request to the extent that it requires Abbeel, as a non-party, to produce materials that Plaintiffs can obtain from the parties to the action. Abbeel objects to this Request to the extent it seeks information that is already in the possession of Plaintiffs or otherwise equally available to Plaintiffs. Abbeel objects to this Request to the extent it seeks the production of information protected from discovery by the attorney-client privilege, work product doctrine, common-interest doctrine, or any other applicable privilege or immunity. Abbeel objects to this Request as seeking information that is not relevant to a claim or defense. Abbeel objects that the phrase "Content necessary for search capabilities in the development and incorporation of Perplexity and/or any Perplexity Predecessor Technology" is vague and ambiguous as used in this Request.

**Mr. Abbeel asserted the following response to each Category of documents:**

**Abbeel's Response to Category No. 1–15:** Subject to and without waiving the foregoing General and Specific Objections, Abbeel responds as follows: Abbeel will produce non-privileged documents responsive to this Request to the extent such documents exist, can be located and produced after a reasonable search and can be located and produced without undue burden or expense.

## III.    LEGAL STANDARD

"The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b)." *Erickson v. Builder Advisor Grp. LLC*, 2022 WL 1265823, at *2 (N.D. Cal. Apr. 28, 2022) (citing, *inter alia*, Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) and Fed. R. Civ. P. 34(a)). Rule 26 permits a party to discover any matter that is relevant to a claim or defense and that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, on a motion to compel discovery, the moving party must first demonstrate that the information requested is within the scope of permissible discovery," and, once it has, "[t]he burden then shifts to the party opposing discovery to show 'that the information is being sought to delay bringing the

case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information.'" *Erickson*, 2022 WL 1265823, at *2 (quoting *In re: Subpoena to Apple Inc.*, 2014 WL 2798863, at *2 (N.D. Cal. Jun. 19, 2014)).

## IV.    ARGUMENT

Movants seek to compel Mr. Abbeel to search for and produce responsive communications from non-email messaging platforms, including communications sent and received using messaging platforms such as iMessage, WhatsApp, Slack, Discord, and Signal, for each of the requested Categories in the Subpoena.  Mr. Abbeel may not categorically refuse to search for or produce all non-email sources of documents.  First, the scope of the Subpoena is not limited to emails, and Mr. Abbeel does not and cannot justify his refusal to search for or produce documents from other data sources.  Indeed, his counsel has offered no explanation as to why it is more burdensome to collect and search Mr. Abbeel's non-email messages than emails.  Second, discovery in this case has already revealed, and Mr. Abbeel's counsel has confirmed, that Mr. Abbeel likely communicated about matters responsive to the Subpoena through non-email messaging platforms.  *See* Stein Decl. ¶¶ 11, 14.  During their meet and confers with counsel for Mr. Abbeel, Movants proposed various ways to minimize any purported burden, including eight narrowed search strings and limiting messaging searches to messaging chains with certain individuals.  *See* Stein Decl. Ex. E.  Mr. Abbeel failed to engage with any of Movants' offers and instead refused to collect, review, or produce any non-email messages whatsoever.  *See id.*

Discovery produced to date has shown that Perplexity's founders relied heavily on non-email messaging platforms. *See* Stein Decl. ¶ 11.  Mr. Abbeel's non-email messages are *more* likely to contain responsive documents than his emails.  Perplexity has not produced any non-email messages its founders exchanged with Mr. Abbeel.  *See id.* at ¶ 9.  Considering the high likelihood that such messages did at one time exist, but may no longer be in Perplexity's founders' possession, Movants must look to other sources—such as Mr. Abbeel—to obtain key documents.  Mr. Abbeel's documents and communications from non-email messaging platforms are relevant, necessary, and proportional to the needs of the case and should be ordered to be produced.

**A.        The Documents the Subpoena Seeks Are Relevant to the Issues in the Case**

"Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) (citation omitted). Relevant information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Moreover, where, as here, "a district court['s] only connection with a case is supervision of discovery ancillary to an action in another district," the court "should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt the court should be permissive." *In re Subpoena to Paypal Holdings, Inc.*, Case No. 20-mc-80041-AGT, 2020 WL 3073221, at *2 (N.D. Cal. June 10, 2020) (cleaned up). Regardless, the information sought by the Subpoena *is* reasonably calculated to lead to the discovery of admissible evidence and is plainly relevant for the purpose of satisfying Rule 26.

*UMG Recordings, Inc. v. AH Capital Management, LLC*, No. 25-mc-80194-KAW (N.D. Cal. Sept. 9, 2025), ECF No. 28 is directly analogous. *See* Stein Decl. Ex. G. That case involved copyright infringement claims against a Generative AI music service. In that matter, the plaintiffs filed a motion to compel production of documents in the custody of a16z, a venture capital firm, which was an early investor in the defendant AI company (Udio). *Id.* at 1. The *UMG* plaintiffs, like Movants here, sought internal documents concerning the AI defendants' training data, copyright liability, business risks, and anticipated market impact. *Id.* at 1–2. Because a16z was a "lead investor who ha[d] served a key advisory role to Udio," another a16z partner sat on Udio's Board of Directors, and yet another partner "serve[d] as Board Observer," the court found that a16z was likely to have documents in its possession which "reflect[ed] Udio's knowledge, state of mind, and intent as is relevant to the copyright infringement claims" asserted in the case. *Id.* at 4. The court also expressly rejected a16z's argument that it was a "mere passive investor, whose only role was deciding whether or not to invest in Udio." Reasoning further that "information about Plaintiffs' sound recordings, Udio's training data, copyright liability, business risks, and efforts to license training data" was relevant to willfulness and that "information about the market for Udio's services and its actual or potential impact on the music industry" was relevant to fair use, *id.* at 6, the court granted the plaintiffs' motion to compel, *id.* at 7.

16

Much like a16z in *UMG Recordings, Inc. v. AH Capital Management, LLC*, Mr. Abbeel is an early investor with "a key advisory role to" Perplexity, as Mr. Abbeel was one of Perplexity's initial investors and Srinivas's PhD advisor and mentor. *Supra* at 4. Other documents produced in response to this litigation have confirmed Mr. Abbeel's important and early role at Perplexity. *See* Stein Decl. ¶ 11. In cases such as this, where the investor is not "a mere passive investor, whose only role was deciding whether or not to invest," courts in this district have compelled production of materials from the investor where "there is reason to believe that [the investor] will have documents that . . . reflect [the company's] knowledge, state of mind, and intent as is relevant to the copyright infringement claims of this case." Stein Decl. Ex. G at *4; *accord Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *4 (N.D. Cal. Aug. 18, 2008) ("Due to respondents' close relationships with defendants, respondents may have obtained information regarding defendants' intent and knowledge through oral communications, which respondents then incorporated into their internal analyses and communications with potential investors.").

As set forth below, the documents and information sought by the Subpoena are relevant to key issues in dispute in the Action: whether Perplexity reproduced Movants' content; whether it did so willfully; and the merits of Perplexity's fair use defense.

**1.      The Non-Email Messages the Subpoena Seeks Are Relevant to Movants' Claims of Infringement and Damages**

Abbeel has not denied responsive documents may exist among his non-email messages. That is because the documents sought by the Subpoena are directly relevant to the hotly contested issues in the Action. Movants' Requests target Perplexity's acquisition and use of copyrighted content, including content belonging to Movants, and copyright risks and legal assessments. *See* Requests 3–6, 10–13. Understanding how Perplexity planned to acquire and profit from Movants' content is critical to unlocking the precise nature and extent of Perplexity's infringement. Given the lack of such documents from Perplexity, and the discovery of these types of documents through other third parties thus far, it is critical that Movants turn toward other sources of documents, which would include early investors and advisors like Mr. Abbeel.

17

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA          CASE NO.

Despite the relatively straightforward nature of Movants' claims—that Perplexity copies Movants' Copyrighted Content and repackages it as "Answers"—Movants need discovery to ascertain *how* Perplexity gets that content; how it uses the content; the methods Perplexity utilizes to hide its infringements from Movants' and the public's view; and Perplexity's evolving plans for using copyrighted content to grow its user base (and to decrease traffic sent to the content creators' own websites).  These facts will, *inter alia*, prove whether and how Perplexity has wrongfully copied Movants' copyrighted works—the central issue in the underlying copyright case.  *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014).

Given Mr. Abbeel's close relationship with Srinivas and his early investment and mentorship role to Perplexity, his messages with Srinivas and other Perplexity founders are likely to have discoverable information that will shed light on these key issues, including internal diligence pertaining to his own investment in Perplexity and communications reacting to Perplexity's business plans and goals.  For example, Mr. Abbeel's messages may contain otherwise undiscoverable records of communications regarding Perplexity's state of mind or plans with respect to the treatment of copyrighted content.  *See Viacom Int'l, Inc.*, 2008 WL 3876142, at *4.  Because the copyright and trademark risks associated with Perplexity's unlicensed acquisition and use of content are readily apparent, it is highly likely that Mr. Abbeel, an investor who offered mentorship and advice to the co-founder of Perplexity, had messages with relevant Perplexity individuals concerning these issues.  This is especially pressing in light of the fact that Movants have sought such discovery from Perplexity and have received minimal documents of this kind in response to the discovery requests.

Mr. Abbeel's non-email messages concerning Perplexity's plans in this respect will also help demonstrate whether Perplexity's infringement of Movants' copyright and trademark rights is willful, which is the key consideration as to the availability of enhanced statutory damages should Movants prevail on their claims of copyright infringement.  *See Rovio Entertainment, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545–46 (S.D.N.Y. 2015).  Similarly, evidence of Perplexity's mental state is "a highly important consideration" with respect to the appropriate measure of damages on Movants' trademark infringement claim.  *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S.

18

212, 219 (2020). And Perplexity's intent can serve as important evidence bearing on the issue of copyright and trademark liability. *See, e.g.*, *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997) ("Intent is relevant [to the question whether a misappropriated trademark is likely to confuse consumers] because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user."); *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 17 (9th Cir. 1933) (finding intent to copy significant when assessing whether copying has taken place for copyright purposes).

### 2.    The Non-Email Messages the Subpoena Seeks Are Relevant to Perplexity's Fair Use Defense

The documents and information the Subpoena seeks are also relevant to, at minimum, the first and fourth factors to be considered in connection with Perplexity's asserted fair use defense to Movants' copyright infringement claim. *See* Stein Decl. Ex. B (Perplexity's Answer with Affirmative Defenses). The first fair use factor is "the purpose and character of the use," 17 U.S.C. § 107(1), which "asks whether and to what extent the use at issue has a purpose or character different from the original." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023) (internal quotation omitted). "The fourth fair use factor is the 'effect on the potential market for the copyrighted work,' which considers 'whether, if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work by diminishing potential sales, interfering with marketability, or usurping the market.'" Stein Decl. Ex. G at *5.[6]

Requests 2, 8, and 9 seek documents and information concerning Mr. Abbeel's evaluation of Perplexity's potential interaction with the sources from which it derives its answers, and particularly its disruptive effect upon the market for news content. Documents concerning Perplexity's stated purpose of allowing users to "Skip the Links" bear directly on the issue whether Perplexity's use of Movants' works is intended to serve as a substitute for the underlying sources,

---

[6] This fourth factor is "undoubtedly the single most important element" of Perplexity's fair use defense. *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 189 (2d Cir. 2024) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985)).

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA          CASE NO.

including Movants' copyrighted works. *See Andy Warhol Found.*, 598 U.S. at 532–33 ("A use that shares the purpose of a copyrighted work . . . is more likely to provide the public with a substantial substitute for matter protected by the copyright owner's interests in the original work . . . which undermines the goal of copyright.") (cleaned up).  And these documents will further illustrate the manner in which Perplexity's co-opting of Movants' works risks usurping the market for those works and diminishing Movants' potential income by diverting users away from Movants' own platforms.  *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1055 (N.D. Cal. 2025) (explaining that, where an infringing technology "can generate literally millions of secondary works, with a miniscule fraction of the time and creativity used to create the original[s]," the fourth fair use factor—potential dilution of the plaintiffs' market—will often result in a finding that the proposed use is not fair).

During meet and confer discussions, Mr. Abbeel's counsel explained that Srinivas was Mr. Abbeel's student at University of California, Berkeley, Mr. Abbeel received early shares of Perplexity, and Mr. Abbeel was an early advisor on Perplexity's board for a period of time.  Stein Decl. ¶ 13.  Counsel also confirmed the existence of non-email messages between Mr. Abbeel and Srinivas, stating there were "a lot of messages" between the two individuals.  *Id*.  Given these facts, there is a high likelihood that Mr. Abbeel's non-email messages will contain information on diligence and/or analysis of Perplexity's products, which would itself contain information on Perplexity's Answer Engine's potential dilutive effect on the market for journalism and news consumed on Movants' (and other publishers') webpages.  And they are likely to contain information about Perplexity's view of its own market potential from its earliest stages.

**B.    The Non-Email Messages Are Proportional to the Needs of the Case**

Rule 26(b)(1) sets forth the relevant factors in considering whether discovery sought is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Those factors are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.  Here,

20

the Subpoena's 15 narrow and targeted document requests focus on key matters at issue in the Action and are proportional to the needs of the case.

The Action, along with a handful of other cases that concern the use of copyrighted materials in connection with Generative AI, are some of the most important cases in the realm of copyright law that are currently pending in the federal court system. The outcome of the case will have profound impact on journalists, publishers, as well as developers of applications that use Generative AI in connection with its reproduction of content. The quantum of statutory damages that could be awarded to Movants, if they succeed in proving that Perplexity scrapes and copies their entire online archives of *The Wall Street Journal* and the *New York Post*, could be in the hundreds of millions of dollars.

The remaining factors also all favor Movants. Movants have no independent access to Mr. Abbeel's non-email messages and the critical information they may contain—having already sought these documents from Perplexity to no avail—whereas Mr. Abbeel has received extensive access to such information through his role as an important early investor and advisor, and his close relationship with Srinivas. Movants have attempted to work with Mr. Abbeel and his counsel to create the least burdensome ways to comply with the Subpoena—narrowed the scope of documents requested, proposed tailored search strings, and limited the request to only certain recipients. *See* Stein Decl. Ex. E. There is no basis for Mr. Abbeel to assert a claim about proportionality through a boilerplate objection without even conducting a search of such documents. *See Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 107 (D. Mass. 2021) (rejecting a party's argument that conducting a search of documents would take "seemingly limitless hours, or perhaps days" when that party had not conducted a preliminary search of the documents or estimated time or cost).

The Subpoena's requests all target core issues in the underlying litigation, as discussed above, and production of responsive non-email messages will likely result in the discovery of important information about those issues. And the limited burden of compliance with the Subpoena does not outweigh the importance of resolving these important cases based on a fully developed record.

**C.      Mr. Abbeel Has No Basis to Refuse to Fully Comply with the Subpoena**

Mr. Abbeel's primary, boilerplate objection to the production of non-email messages in response to the Subpoena—that Movants should not impose a burden on a nonparty—misses the mark, as "there is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession." *Viacom Int'l*, 2008 WL 3876142, at *3; *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3416644, at *3 (N.D. Cal. July 14, 2024) ("Rule 45 does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty.").

Movants have already sought from Perplexity documents and communications shared with investors, including those containing business or marketing plans (RFP 93), information about Perplexity's tagline "Skip the Links," (RFP 90), and information about the subject matter of the Action (RFP 95). Stein Decl. ¶ 8 & Ex. F. Perplexity substantially completed its production of documents in response to these requests on March 13, 2026. Stein Decl. ¶ 9. Its productions included only a handful of communications involving Mr. Abbeel. *Id*. Given Mr. Abbeel's counsel's admission that Mr. Abbeel and Srinivas messaged "a lot," Mr. Abbeel likely possesses many messages that Srinivas and/or Perplexity may have not retained. Stein Decl. ¶¶ 13, 14. Mr. Abbeel may not shield his messages from discovery on the basis that Perplexity has produced all responsive documents or Perplexity should be the only source from which Movants may obtain them.

Once again, *UMG* and *Viacom* are squarely on point. In each of those cases, the subpoenaed investors refused to comply with subpoenas on the basis that relevant materials could be obtained from the defendant. And in each case, the court rejected this argument, finding that the close relationship between the key investors and technology companies suggested that the investors may possess documents not obtainable from the defendant and appropriately subject to discovery requests. Stein Decl. Ex. G at *3–4; *Viacom Int'l*, 2008 WL 3876142, at *1. As described above, the nearly identical facts of this case—where Mr. Abbeel is not "a mere passive investor" but a closely intertwined early investor and advisor, *see* Stein Decl. Ex. G at *4—bring it well within the holdings of *UMG* and *Viacom*.

Movants have tried to address any purported undue burden associated with searching for and producing non-email messages in response to the Subpoena. Stein Decl. Ex. E. Unfortunately, Mr. Abbeel has refused to identify any burden with any degree of specificity, and when Movants unilaterally offered concessions, Mr. Abbeel refused to engage with them. *Id.*, Ex. E. Mr. Abbeel's search of his emails only is not sufficient to comply with the Subpoena—particularly, here, where he is aware that responsive communications likely exist in another source. *See V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 367 (D. Nev. 2019) (finding that a search of only a party's business email account—and not personal email account or text messages—was defective for a subpoena response). The use of non-email messaging apps is a well-known method of communication in the startup world, and discovery to date reflects that Perplexity's co-founders frequently utilized this form of communication.

Mr. Abbeel has no lawful basis to refuse to fully comply with the Subpoena, and his blanket refusal to search his non-email messages without any showing of undue burden is improper. *See SEC v. Mozilo*, 2010 WL 11468959, at *3 (C.D. Cal. Oct. 7, 2010) (nonparty "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena"); *see also Peskoff v. Faber*, No. CIV A. 04-526 HHKJMF, 2006 WL 1933483, at *4 (D.D.C. July 11, 2006) (stating that "[d]uring discovery, the producing party has an obligation to search available electronic systems for the information demanded") (internal citation omitted).

## V.    CONCLUSION

For all of these reasons, the Court should compel Mr. Abbeel to produce all non-privileged communications from his non-email messaging platforms in his custody that are responsive to the Subpoena. The Court should order that such production be substantially completed within 14 days of the Court's entry of an Order granting the same.

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA        CASE NO.

DATED:  June 26, 2026

/s/ Laurie J. Edelstein
Laurie J. Edelstein (CA Bar No. 164466)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
Tel: (628) 267-6800
ledelstein@jenner.com

Alison I. Stein (*pro hac vice* application forthcoming)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel: (212) 891-1622
astein@jenner.com

*Counsel for Plaintiffs and Movants*
*Dow Jones & Company, Inc. and NYP Holdings, Inc.*

PLS.' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA          CASE NO.